IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:14-CV-211-FL

| | | |
|---|---|---|
| BARNHILL CONTRACTING COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| PAULA OXENDINE; DAVIE LYNN SMITH; STORM BUILDERS, INC.; ROY BAIN; and BAIN & RODZIK PC, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on the motion to dismiss for failure to state a claim by defendants Roy Bain and Bain & Rodzik PC (the "Bain defendants") (DE 7). Plaintiff responded in opposition, and the Bain defendants replied. The court stayed further case scheduling activities pending resolution of the motion. In this posture, the issues raised are ripe for ruling. For the following reasons, the Bain defendants' motion to dismiss will be granted in part and denied in part, and the court will lift the stay.

## BACKGROUND

Plaintiff, as plan sponsor, administrator, and fiduciary of the Barnhill Contracting Company Employee Health Plan (the "Plan"), brought suit on September 29, 2014, against defendant Paula Oxendine ("Oxendine"), a participant in the Plan and recipient of medical benefits under the Plan; defendants Storm Builders, Inc. and Davie Lynn Smith (the "Storm defendants"), who settled claims for an automobile accident involving defendant Oxendine; and the Bain defendants, an attorney and a law firm that obtained the settlement on behalf of defendant Oxendine.

Plaintiff seeks declaratory and injunctive relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., 29 U.S.C. §§ 1132(a),(e), (f), and (g), as well as compensatory damages based on state common law claims. As pertinent here, plaintiff brings the following claims against the Bain defendants:

1. Declaratory relief, seeking declaration as to plaintiff's reimbursement, subrogation, and recovery rights under the Plan to funds expended by plaintiff and paid, recovered, or to be recovered by the Bain defendants (First Cause of Action);

2. Intentional / negligent interference with contract (Sixth Cause of Action);

3. Conversion (Seventh Cause of Action).

The Bain defendants moved to dismiss all claims against them for failure to state a claim on October 21, 2014, and the motion was fully briefed. On February 27, 2015 the court stayed further scheduling activities until disposition of the pending motion to dismiss. On March 17, 2015, on plaintiff's motion, the court entered default judgment against defendant Oxendine. On March 27, 2015, the court awarded attorney's fees against defendant Oxendine, and the court entered separate judgment on attorney's fees on April 6, 2015.

## STATEMENT OF FACTS

The facts alleged in the complaint, as pertinent to the Bain defendants' motion to dismiss, may be summarized as follows.

Defendant Oxendine was a participant in the Plan, either directly or through a family member. Defendant Oxendine was injured in a motor vehicle accident on February 16, 2012, when a vehicle in which she was a passenger collided with a vehicle driven by defendant Davie Lynn Smith. Pursuant to the terms of the Plan, the Plan paid significant medical expenses on behalf of

2

defendant Oxendine as a result of said motor vehicle accident. The sums expended by the Plan on behalf of defendant Oxendine are specifically identifiable amounts itemized by defendant Oxendine's health care providers from the date of said motor vehicle accident to and including the present date, which sums total no less than $69,117.31 ("Specifically Identified Funds").

Defendant Oxendine contended that the Storm defendants were responsible for the injuries and damages she sustained in the motor vehicle accident, including the medical expenses incurred by defendant Oxendine. Defendant Oxendine retained the Bain defendants as counsel to pursue recovery from the Storm defendants and their liability insurance carrier for damages Oxendine sustained as a result of the accident.

The Plan enjoys rights of subrogation and reimbursement as set forth in relevant provisions of the Plan's Summary Plan Description, which provides, in relevant part:

> Immediately upon paying or providing any benefit under the PLAN, the PLAN shall be subrogated to the rights of recovery a MEMBER has against any party potentially responsible for making any payment to a MEMBER due to a MEMBER's injuries, illness or condition, to the full extent of benefits provided or to be provided by the PLAN.
>
> In addition, if a MEMBER receives any payment from any potentially responsible party as a result of an injury, illness or condition, the PLAN has the right to recovery from, and be reimbursed by, the MEMBER for all amounts the PLAN has paid and will pay as a result of that injury or illness, up to and including the full amount the MEMBER receives from all potentially responsible parties. The MEMBER agrees that if the MEMBER receives any payment from any potentially responsible party as a result of an injury or illness, the MEMBER will serve as a constructive trustee over the funds for the benefit of the PLAN. Failure to hold such finds in trust will be deemed a breach of the MEMBER's fiduciary duty to the PLAN.

(Compl. ¶12, Ex. A).

On multiple occasions, plaintiff has provided actual and/or constructive notice to the Bain defendants that it had claims for reimbursement and/or subrogation arising from the payment of

3

medical benefits pursuant to the Plan. The notices informed the Bain defendants that they may be required to satisfy the Plan's claim with any monetary recovery that defendant Oxendine received from or on behalf of the Storm defendants as a result of her claims.

Without the Plan's knowledge or consent, defendant Oxendine, through and with the assistance of her counsel, the Bain defendants, settled her claims against the Storm defendants and their liability insurance carrier arising out of the February 16, 2012, automobile accident for the sum of $284,594.00. The Bain defendants refused, and continue to refuse, to acknowledge the existence of plaintiff's claims for reimbursement and subrogation pursuant to the Plan or otherwise.

Defendant Oxendine and the Bain defendants have made a recovery of funds as a result of a settlement, a portion of which rightfully belongs to plaintiff under the terms of the Plan. Such monies rightfully belonging to Plaintiff are in the possession and/or control of defendants, including the Bain defendants. The Specifically Identified Funds were paid by or on behalf of the Storm defendants to defendant Oxendine and/or the Bain defendants without recompense to plaintiff as required by the Plan and despite notice to defendant Oxendine and the Bain defendants of the Plan's rights with respect to such funds.

## DISCUSSION

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

4

Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir.2009) (citations omitted).

B.   Analysis

   1.   Declaratory Relief under ERISA

The Bain defendants argue that plaintiff's claim against them for declaratory relief under ERISA should be dismissed because they were not bound by the Plan's terms and there are no allegations that they acted in bad faith or negligently in disbursing the settlement funds. They contend that an attorney's disbursing of settlement funds to a plan participant, even where the attorney has knowledge of a plan's claim, is insufficient to state a claim for equitable relief under ERISA. Defendants rely upon two decisions of this court that have so held, T.A. Loving Co. v. Denton, 723 F. Supp. 2d 837 (E.D.N.C. 2010), and Great-W. Life & Annuity Ins. Co. v. Bullock, 202 F. Supp. 2d 461 (E.D.N.C. 2002). For the reasons that follow, the court declines to follow Denton and Bullock, and instead holds that plaintiff has stated a claim for equitable relief under ERISA against the Bain defendants.

The ERISA section under which plaintiff brings its suit, 29 U.S.C. § 1132(a)(3), provides in pertinent part as follows:

> A civil action may be brought . . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the

5

terms of the plan, or (B) <u>to obtain other appropriate equitable relief</u> (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added).

Section 1132(a)(3) "admits of no limit (aside from the 'appropriate equitable relief' caveat . . .) on the universe of possible defendants." <u>Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.</u>, 530 U.S. 238, 246 (2000). "[T]he focus, instead, is on redressing the '<u>act or practice</u>' which violates any provision of [ERISA Title I]." <u>Id.</u> (quoting 29 U.S.C. § 1132(a)(3)) (emphasis in original).

At the outset, in light of <u>Harris</u>, defendants' suggestion that they deserve special treatment under ERISA because they are attorneys is misplaced. Like any other non-parties to an ERISA plan, they may be subject to an action for equitable relief where the requirements for such relief are met. The Supreme Court has set forth the requirements for such equitable relief. In <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248 (1993), the court construed the "appropriate equitable relief" provision to authorize "those categories of relief that were typically available in equity," and thus the court rejected a claim that sought "nothing other than compensatory damages." <u>Id.</u> at 256, 255. In <u>Harris Trust</u>, the court observed "it has long been settled that when a trustee in breach of his fiduciary duty . . . transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty." 530 U.S. at 250. "The constructive trust" that is formed "is based on property, not wrongs." <u>Id.</u> at 251 (quotation omitted).

"[T]raditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were 'particular funds or property in the defendant's possession.'" <u>CIGNA Corp. v. Amara</u>, 131 S.Ct. 1866, 1879 (2011) (quoting <u>Great-West Life &</u>

6

Annuity Ins. Co. v. Knudson 534 U.S. 204, 213 (2002)).  Accordingly, "where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant." Knudson 534 U.S. at 213-14 (quoting Restatement (First) of Restitution § 215 cmt. a, p. 867 (1936)).

Where, by contrast, funds sought are "specifically identifiable funds" that are "within the possession and control" of the defendant, such as "that portion of the tort settlement due [plaintiff] under the terms of the ERISA plan," ERISA provides for equitable relief.  Mid Atlantic Medical Services, LLC v. Sereboff, 547 U.S. 356, 362-63 (2006).  In Sereboff, both the Supreme Court and the Fourth Circuit (whose judgment was affirmed) held that a plan provision similar to that here, which requires a plan beneficiary to reimburse the plan from "all recoveries from a third party," creates a "constructive trust or equitable lien on a specifically identifiable fund" for purposes of equitable relief under ERISA.  Id. at 359 & 363; see Mid Atlantic Medical Services, LLC v. Sereboff, 407 F.3d 212, 215 & 218 (4th Cir. 2005); cf. Compl. ¶12 (providing that "the PLAN has the right to recovery from, and be reimbursed by, the MEMBER for all amounts . . . up to and including the full amount the MEMBER receives from all potentially responsible parties).

Further, in so holding, the Fourth Circuit in Sereboff relied on circuit court authority recognizing availability of such equitable relief against both plan beneficiaries and their attorneys, without distinction, even though in Sereboff the court only had occasion to address a claim for equitable relief against an account of a plan beneficiary.  See Sereboff, 407 F.3d at 219 (discussing Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 358 (5th Cir. 2003), in which the court held that an ERISA plan's "requested relief – the

7

imposition of a constructive trust over specifically identifiable settlement funds <u>held in the trust account of [a] law firm</u> as agent for [a plan beneficiary] – to be equitable in nature.") (emphasis added). Similarly, the Supreme Court, relied in its decision in <u>Sereboff</u> upon a case involving an equitable claim to a portion of a contingent fee held by an attorney. <u>See</u> <u>Sereboff</u>, 547 U.S. at 363-64 (discussing <u>Barnes v. Alexander</u>, 232 U.S. 117 (1914) (upholding equitable claim to portion of contingency fee held by attorney)).

Although the Fourth Circuit has not addressed the standard for equitable relief in a suit directly against a third party, such as an attorney holding settlement funds, other circuit courts of appeals recently have uniformly allowed equitable relief against third parties in circumstances analogous to the present case. For example, in <u>ACS Recovery Servs., Inc. v. Griffin</u>, 723 F.3d 518, 527 (5th Cir. 2013), the Fifth Circuit *en banc* held that a plan could seek equitable reimbursement from a third-party special needs trust, of funds received in tort settlement for injuries incurred by a plan beneficiary, under the theory that the plan held an equitable lien on such funds. In so holding, the court noted that "[u]nder <u>Knudson</u>, [and] <u>Sereboff</u>, . . . the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient." <u>Id.</u> at 527.

The court also noted that several "other circuits have readily enforced ERISA plan reimbursement terms against third parties holding tort settlements achieved by plan beneficiaries." <u>Id.</u> at 526. Notably, "[c]onstructive trusts have been imposed to enforce a plan's equitable lien by agreement on settlement proceeds held by a beneficiary's tort lawyer, <u>Longaberger v. Kolt</u>, 586 F.3d 459 (6th Cir.2009); by a trustee of his wife's special needs trust, <u>Admin. Comm. of Wal–Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank</u>, 500 F.3d 834 (8th Cir.2007); and by a

8

conservator acting as a trustee for a special needs trust. Admin. Comm. for Wal–Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton, 513 F.3d 1223 (11th Cir.2008)." ACS Recovery, 723 F.3d at 526. Most recently, in AirTran Airways, Inc. v. Elem, 767 F.3d 1192, 1199 (11th Cir. 2014), the Eleventh Circuit allowed a plan to seek reimbursement against an attorney that held settlement funds subject to a plan's equitable lien, holding that when the plan trustee "transferred the trust property to [the attorney], the attorneys took the property subject to the trust, unless they purchased the property for value and without notice of the fiduciary's breach of duty." Id. at 1199.[1]

In sum the overwhelming weight of Supreme Court and other circuit court authority supports the availability of a claim for equitable relief against the Bain defendants, where plaintiff seeks a declaration as to its reimbursement and recovery rights under the Plan for specifically identifiable funds – the settlement proceeds up to the amount of $69,117.31 in medical benefits paid – in the possession and control of the Bain defendants, where it is alleged that the Bain defendants had notice of the plan's subrogation to defendant Oxendine's rights of recovery.

The Bain defendants, as noted above, urge the court to disregard the authority above and instead rely upon the holding of this court in Bullock and Denton. In those two cases, the court held that the right of a plan to recover settlement proceeds from an attorney is dependent upon an allegation of "negligence," "bad faith," or "wrongdoing" on the part of the attorney. See Bullock, 202 F.Supp.2d at 466; Denton, 723 F.Supp.2d 842. This conclusion was grounded in the premise

---

[1] Notably, although one justice dissented in Elem, the dissent was based not on the unavailability of equitable relief against an attorney, but rather because, under the facts of that case there was a dispute over whether the identifiable funds were "in the possession and control" of the defendants. AirTran Airways, 767 F.3d at 1203 (Martin, J., dissenting). In the case at bar, plaintiff has alleged that settlement funds are in the possession and control of the defendants, including the Bain defendants. (Compl. ¶¶15, 35). To the extent further factual development in the case suggests that there are no identifiable settlement funds in the possession and control of the Bain defendants, the court may have occasion to revisit the availability of equitable relief against the Bain defendants. At this stage of the case, however, dismissal of the equitable claim for declaratory judgment is not warranted on this ground.

9

stated in Bullock that, under Fourth Circuit law, courts must look to "the forum state's law" to inform upon "federal common law of rights and obligations under ERISA-regulated plans." Bullock, 202 F.Supp.2d at 464 (citing Jenkins v. Montgomery Indus., Inc., 77 F.3d 740, 743 (4th Cir. 1996)); see Denton, 723 F.Supp. 2d at 841-42 (citing Bullock, 202 F.Supp.2d at 465)).

While this premise is unassailable as a general rule, it is inapposite in the present circumstances for several reasons. First, the sole Fourth Circuit case relied upon, Jenkins, does not address application of state law to determine the scope of equitable relief under 29 U.S.C. § 1132(a)(3). Rather, it addresses application of state law in order to define a term in an ERISA benefit plan. See Jenkins, 77 F.3d at 743. Jenkins does not provide any insight, accordingly, on the use of North Carolina law to define the proper scope of equitable relief under § 1132(a)(3).

Second, by contrast, in Sereboff, where the Fourth Circuit was in fact addressing the scope of equitable relief under 29 U.S.C. § 1132(a)(3), under analogous circumstances to the instant case, the court declined the suggestion to apply state law in doing so. 407 F.3d at 216, n.3.

Third, as noted in Jenkins, state law is applicable only "if compatible with national policies underlying [ERISA]," and only if it does "not conflict with the Congressional purpose of enacting ERISA." 77 F.3d at 743-44. Harris Trust and Sereboff make clear the need under ERISA for uniform equitable relief against specifically identifiable funds without regard to the identity of a defendant, much less the location of a defendant in a particular forum state. See Harris Trust, 530 U.S. at 246; Sereboff, 547 U.S. at 364.

Finally, two of the three cases used by Bullock to define the contours of North Carolina law are inapposite to the scope of equitable relief under § 1132(a)(3), because those cases address the scope of recovery at law for damages against an attorney. See, e.g., Title Ins. Co. of Minnesota v.

10

Smith, Debnam, Hibbert & Pahl, 119 N.C. App. 608, 613 (1995) (action for damages due to attorney malpractice); United Leasing Corp. v. Miller, 45 N.C. App. 400, 408 (1980) (negligence action for damages with duty to plaintiff arising from employment contract). Those two cases do not address the concepts of equitable lien and constructive trust detailed in Harris Trust, Knudson, Sereboff, which form the basis for the court's holding in the instant matter.

The third state case cited in Bullock, by contrast, is consistent with the court's holding here. In Heib v. Lowery, the court allowed recovery against an attorney for funds subject to an equitable lien, on the basis that such funds were in possession and control of the attorney, not on the basis of bad faith or wrongdoing of the attorney. 134 N.C. App. at 17. Heib is thus consistent with Harris Trust, Knudson, and Sereboff, and the court's determination here that ERISA permits reimbursement from funds held in possession and control of an attorney.

For these reasons, the court declines to follow Bullock and Denton, and relies instead upon the Supreme Court and circuit court authority discussed herein supporting the conclusion that ERISA allows a claim for equitable relief against an attorney holding settlement funds subject to the equitable lien of an ERISA plan, as alleged here. Therefore, the Bain defendants' motion to dismiss the claim for declaratory relief will be denied.

    2.    Tortious or Negligence Interference with Contract

The North Carolina Supreme Court has recognized a claim under North Carolina law based upon tortious interference with contract, comprised of the following elements:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

11

Embree Const. Grp., Inc. v. Rafcor, Inc., 330 N.C. 487, 498 (1992). Although plaintiff suggests in the complaint that it is asserting in the alternative a claim based upon negligent interference with contract, plaintiff does not provide any basis under North Carolina law for asserting such an alternative claim. Indeed, in opposition to the Bain defendants' motion to dismiss, plaintiff does not mention negligent interference with contract as a basis for relief. Accordingly, the court addresses the interference with contract claim in accordance with the elements set forth in Embree.

The Bain defendants argue that plaintiff has not alleged facts sufficient to satisfy the intentional inducement element of the tortious interference with contract claim. The court agrees. Plaintiff alleges only that the Bain defendants knew of plaintiff's claim to an equitable lien over the settlement proceeds. (See, e.g., Compl. ¶¶ 13, 35). Plaintiff does not allege any facts that the Bain defendants directed or induced defendant Oxendine to withhold funds from plaintiff, attempted to conceal funds from plaintiff, or otherwise allege conduct that is intentionally tortious in nature. (See id.).

Therefore, plaintiff's asserted claims for intentional or negligent interference with contract will be dismissed.

3. Conversion

"[C]onversion . . . has long been defined by the Supreme Court of North Carolina as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 190 (4th Cir. 2007) (quoting Peed v. Burleson's, Inc., 244 N.C. 437 (1956)).

12

"Conversion necessarily involves an intentional act, though the intention need not be wrongful; the tort requires that the actor act in some manner toward personal property that actually belongs to another." Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol, 893 F. Supp. 526, 543 (E.D.N.C. 1994); see Madey v. Duke Univ., 336 F. Supp. 2d 583, 600 (M.D.N.C. 2004) ("[U]nder North Carolina law, even if a Defendant rightfully comes into possession of the goods, a conversion occurs when the rightful owner demands return of the goods and the Defendant refuses."); Restatement (Second) of Torts § 224 cmt. c (1965) (stating that "the defendant may be liable for conversion where he has in fact exercised dominion or control, although he may be quite unaware of the existence of the rights with which he interferes").

Plaintiff has alleged sufficient facts to state a claim for conversion. First, plaintiff has alleged its ownership by virtue of equitable lien in up to $69,117.31 of the settlement proceeds. (See, e.g., Compl. ¶¶12, 13, 17, 35, 58). Second, plaintiff has alleged that the Bain defendants (in addition to defendant Oxendine) are in possession of some or all of such funds, contrary to the assertion of ownership rights by plaintiff. (Id. ¶¶ 15, 35, 58-59).

The Bain defendants argue that plaintiff has not established that their "disbursement to Oxendine" of settlement funds was unauthorized. (DE 8 at 8-9). Plaintiff, however, does not merely allege unauthorized "disbursement" of settlement funds. Rather, plaintiff alleges "possession and/or control" of settlement funds by defendants, including the Bain defendants. (Compl. ¶¶15, 58). Because such possession allegedly was contrary to plaintiff's asserted equitable lien over a portion of such funds, and thus unauthorized, plaintiff has sufficiently alleged the elements of conversion. See, e.g., Vaseleniuck Engine Dev., LLC v. Sabertooth Motorcycles, LLC, 219 N.C. App. 540, 543 (2012) (allowing conversion claim to trial where "genuine issue of material fact exists regarding

13

whether [plaintiff] has a valid possessory lien"); Tudor Associates, Ltd., II By & Through Callaway v. AJ & AJ Servicing, Inc., 1994 WL 510456 *5, 36 F.3d 1094 (4th Cir. Sept. 20, 1994) ("a lienholder may sue for conversion of the property on which his lien exists if it is wrongfully disposed of by the owner").[2]

Whether these allegations will be supported upon further factual development is a question for another day. At this stage in the case, these allegations state a claim for conversion. Accordingly, the Bain defendant's motion to dismiss plaintiff's conversion claim will be denied.

## CONCLUSION

Based on the foregoing, the Bain defendants' motion to dismiss (DE 7) is GRANTED IN PART and DENIED IN PART. In particular, plaintiff's claim for tortious interference with contract is DISMISSED WITHOUT PREJUDICE. Plaintiff's claims for declaratory relief and for conversion are ALLOWED to proceed, in addition to claims against the Storm defendants all remaining. Accordingly, the court LIFTS the stay of scheduling activities. The parties who have appeared in this case shall file a joint supplemental Rule 26(f) report setting forth proposed deadlines and limitations for discovery and dispositive motions, within **21 days** of the date of this order. Upon receipt thereof, the court will enter a case management order as warranted.

SO ORDERED, this the 12th day of May, 2015.

_____
LOUISE W. FLANAGAN
United States District Court Judge

---

[2] In so holding, the court need not reach plaintiff's alternative theory that "disbursement of settlement funds is not authorized by the Rules of Professional Conduct." (DE 12).

14